## 35085. JACKSON *v.* COMMERCIAL CREDIT CORPORATION.

DECIDED JULY 8, 1954.

*Robert L. Cork,* for plaintiff in error.

*Franklin, Eberhardt & Barham,* contra.

QUILLIAN, J. 1. Where the vendor and the vendee agree upon a cash price in the sale of personal property, but later enter into a written conditional-sale contract fixing the time price at a much higher figure, under the holdings of this court the conditional bill of sale is valid. *Richardson* v. *C. I. T. Corp.,* 60 *Ga. App.* 780 (5 S. E. 2d 250).

2. In the event a credit company is aware that the seller of personal property is charging, and the vendee agrees to pay, a much higher credit price for personal property than was originally agreed upon by them as a cash price for the same, for the

purpose of inducing the credit company to buy a conditional-sale contract from the vendor at the cash price, this without more would furnish no legal impediment for the collection from the vendee of the full credit or time price evidenced by the bill of sale.

3. The petition in the instant case does not merely allege that the defendant purchased and had transferred to it a bill of sale made by the plaintiff to the vendor of an automobile, with knowledge prior to the execution of the instrument that it was to be given for a time price higher than a cash price charged plaintiff by the vendor for the same automobile. It clearly avers that there was an agreement by the defendant to furnish a sum of money sufficient to pay the cash price of the automobile in consideration of the plaintiff paying the defendant an unlawful rate of interest upon the money loaned. The amount of the loan, that of the interest to be paid, and the length of time for which the money was furnished all clearly appear from the petition. The petition also shows that the amount of interest charged was paid by the plaintiff to the defendant. These allegations, if proved, would entitle the plaintiff to recover the amount paid as interest, and the trial court's judgment sustaining a general demurrer to the petition was error.

The defendant insists that the contract between the vendor and the plaintiff in the form of a conditional-sale contract was in writing, showed the consideration as a material term and not merely by way of recital, and cannot by the plaintiff be disputed or inquired into by the courts.

It is held in the well-considered case of *Wade* v. *Ballard*, 69 *Ga. App.* 669 (26 S. E. 2d 542): "The statement in a complete conditional sale contract that one of the parties 'has this day purchased' from the other party certain described personal property for which he agrees to pay a stated amount of money, is a material contractual term and not a mere recital of the consideration of the contract, and may not be contradicted by parol evidence."

But it will be observed that the *Wade* case is not one in which the investigation concerned usury. The courts must look to the substance of the transaction rather than to the form of the contract, which purports to express its terms, in determining whether it is usurious.

However, the investigation here involves the question of whether the contract involved was a usurious transaction or an instrument intended to cloak a usurious transaction. In *Simpson* v. *Charters*, 185 *Ga.* 592, 599 (196 S. E. 31), in quoting *Pope* v. *Marshall*, 78 *Ga.* 635, 640 (4 S. E. 116), it was said: "The theory that a contract will be usurious or not according to the kind of paper bag it is put up in, or according to the more or less ingenious phrases made use of in negotiating it, is altogether erroneous. The law intends that a search for usury shall penetrate to the substance." And in *Manget Realty Co.* v. *Carolina Realty Co.*, 169 *Ga.* 495 (2) (150 S. E. 828), it was held: "While a deed or bill of sale, absolute on its face, and conceding that it was accompanied with possession of the property, can not be proved, at the instance of the parties, by parol evidence, to be a mortgage only, where fraud in its procurement is not the issue to be tried, when such a deed is executed and delivered and possession thereunder is surrendered to the grantee, who gives to the grantor an instrument which purports upon its face to be an option to repurchase the land conveyed, and where the transaction is a scheme or device to cover usury, it does not fall within the purview of section 3258 of the Civil Code and its true character can be shown by parol evidence. (a) Whether such a transaction was a bona fide sale with a right in the vendor to repurchase, or whether it was a ruse devised to evade the usury laws and to take security for the loan of money, can be shown by parol evidence. The whole transaction is to be looked into; and if, upon the whole it appears that a loan and security for its payment were in truth the purpose and intent of the parties, it will be treated as such, notwithstanding very strong language may be used at the time to give it a different appearance. (b) If the writings which were signed by both parties correctly set forth the agreement between them, then these writings evidence a sale and conveyance of the land, with an option to the vendor to repurchase it within a definite period.. 'However, if a loan was in point of fact made, and these writings merely furnished the cloak for a usurious transaction, then the truth may be shown by parol, and the writings cancelled on payment' of the debt."

Under the authority of the foregoing cases, one lending money

to another for the purpose of paying the purchase price of personal property is nonetheless a lender because he pays the money directly to his borrower's vendor. Nor does it avail a lender who furnished money for such purpose at an unlawful rate of interest anything to have the borrower execute an apparently legal conditional-sale contract payable to the vendor, and then acquire the instrument by endorsement or transfer. The real transaction between the lender and the borrower is not contained in the conditional-sale contract, but in the agreement between the lender and the borrower to pay the usurious interest. The conditional-sale contract is but a by-product of the real agreement and a rather immaterial element of it at that.

The distinction between an ordinary time-price agreement between a vendor and a purchaser and the transaction alleged in this case is that in the former the vendor has a right to charge, as a bona fide time price, one that is higher than a cash price, for whatever purpose he desires, either to obtain more profit for the credit risk or for purposes of facility of sale or discount of the paper, etc., in which no third party participates, while the present petition alleges that there was no such agreement to pay a time price but an agreement between the vendor, purchaser, and the credit company that the credit company would supply the money to cover the difference between the cash price and down payment plus a charge for the loan. Where such an arrangement is made in advance between the credit corporation and the immediate parties to the sale agreement, nothing else appearing, the transaction is not a sale on a time price. Whether the transaction was stripped of its usurious appearance by legal charges for insurance or other legal charges is a matter which does not appear on the face of the petition.

The petition stated a cause of action for the relief prayed, and the trial court erred in sustaining the general demurrer and in dismissing the action.

*Judgment reversed. Felton, C. J., and Nichols, J., concur.*